UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH MOULTON,<br>individually and on<br>behalf of all others<br>similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>LG Electronics, Inc. and<br>LG Electronics USA, Inc.,<br><br>  Defendants. | CIVIL ACTION NO.: 11- |

## CLASS ACTION COMPLAINT AND REQUEST FOR JURY TRIAL

Deborah Moulton (hereinafter "Moulton") through her counsel, on behalf of herself and all other individuals and entities similarly situated (as more fully discussed *infra*), initiates this putative nationwide class action that involves LG Electronics USA, Inc. and LG Electronics, Inc.

Introduction

1. LG Electronics USA, Inc. and LG Electronics, Inc. sold LCD and plasma televisions sold in the United States (hereinafter "class television" or "class televisions") from 2003 through and including 2010.

2. Class televisions include but are not limited to the following LCD model televisions: 32LC2D, 37LC2D and 42LC2D; together with the following plasma model televisions: 42PC3D, 42PC3DV and 50PC3D.

3. All class televisions are predisposed to premature performance degradation and/or complete and total failure within the express and implied warranty periods caused by defective design and manufacture including but not limited to the use of sub-standard components.

4. While some performance degradation occurs during normal operation of any television over time, class televisions have abnormally accelerated degradation of printed wiring boards (also referred to as printed circuit boards within the electronics industry). These printed wiring boards include but are not limited to the power supply PWB, main PWB and other associated boards incorporated in class LCD televisions. Plasma televisions also exhibit accelerated degradation of their respective printed wiring boards including but not limited to X-sustain boards, Y-sustain boards, control boards, digital boards and associated sub-assemblies/components. Class television printed wiring boards also incorporate integrated components including but not limited to circuit chips, resistors, diodes, surface capacitors (including but not limited to radial electrolytic capacitors) and chip capacitors and other board components that prematurely fail due to voltage overload, ripple current, thermal fatigue and other causes including design and manufacture defects.

5. Other concurrent causes of class television failure are insufficient cooling fans, heat sinks and other ventilation

2

components that result in component thermal fatigue / overload and premature failure.

6. Class televisions are defective with respect to their design, workmanship, material and manufacture predisposing class televisions to premature performance degradation and/or complete and total failure while operating in intended and foreseeable environments.

7. The only corrective measure to remedy class television defects is to replace substantial portions of the electronic chassis, cooling systems and other components. Class televisions are failing due to design and manufacture defects after accumulating one quarter to one third of their reasonably anticipated useful life.

8. Moulton and members of the proposed class request *inter alia* return of the purchase price of class televisions, injunctive relief, monetary damages, court costs and attorneys' fees under theories of breach of express and implied warranties, intentional misrepresentation, unfair and deceptive business act practices prohibited by the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* (hereinafter "NJCFA") and unjust enrichment / restitution.

Parties to this Proceeding

9. Moulton is an adult individual residing at 200 Shannock Village Road, Shannock, Rhode Island 02875. Moulton owns a LG class television purchased from an authorized LG television dealer in August 2006 for $1899.99.

10. LG Electronics, Inc. (hereinafter "LG") is a duly organized South Korean corporation with a principal place at LG Twin Towers, 20, Yoido-dong, Yongdunpo-gu, Seoul 150-721, South Korea.

11. For over twenty years, LG and its predecessor companies including GoldStar Co., Ltd. marketed and sold consumer electronic products under the brand name GoldStar and/or LG throughout the United States and New Jersey including Moulton's television and all other class televisions. LG corporate officers and employees regularly travelled to New Jersey in furtherance of business on behalf of LG and its United States corporate subsidiaries including LG employees who were assigned to those subsidiaries.

12. LG had substantial participation in designing, manufacturing and testing Moulton's television together with all other class televisions. LG licensed technology was incorporated in class televisions.

13. LG had substantial participation in drafting the Owner's Manual and warranties (including warranty extensions and secret warranties) that accompanied Moulton's television and all other class televisions.

14. LG had substantial participation in the advertisement, marketing, distribution and sale of class televisions in New Jersey and the United States, including Moulton's television and all other class televisions.

4

15. LG had substantial participation in drafting service and repair publications for class televisions as well as other related materials. The activities of LG in New Jersey are directly attributable to injuries sustained by Moulton and other purchasers of class televisions.

16. LG Electronics USA, Inc. (hereinafter "LG, USA") is a duly organized Delaware corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

17. For over twenty years, LG USA and its predecessor companies marketed and sold consumer electronic products under the brand name GoldStar and/or LG in the United States including Moulton's television and all other class televisions.

18. LG USA had substantial participation in designing, manufacturing and testing Moulton's television together with all other class televisions. LG licensed technology was incorporated in class televisions manufactured by LG USA.

19. LG USA, from its New Jersey headquarters, had substantial participation in drafting the Owner's Manual and warranties (including warranty extensions and secret warranties) that accompanied Moulton's televisions and all other class televisions.

20. LG USA, from its New Jersey headquarters, had substantial participation in the advertisement, marketing, distribution and sale of class televisions in the United States, including Moulton's televisions and all other class televisions.

5

21. LG USA, from its New Jersey headquarters, had substantial participation in drafting service and repair publications for class televisions as well as other related materials.

22. LG, USA is a wholly owned subsidiary of LG. LG, USA imports, advertises, markets, distributes and sells products manufactured by LG and/or products incorporating LG licensed technology in New Jersey and throughout the United States under the brand name LG and/or LG, USA including class televisions.

23. At all relevant times, LG, USA acted as an agent of LG performing activities concerning advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of LG and/or LG, USA branded televisions in the United States, including substantial activities that occurred within New Jersey.

24. LG, USA is a mere instrumentality of LG for activities conducted by LG in New Jersey and throughout the United States.

25. There is a unity of interest and ownership between LG and LG, USA (hereinafter collectively referred to as "Defendants") that adherence to the fiction of separate identity would serve to defeat justice and equity. The separate identity of LG's subsidiary LG, USA ceased to exist and injustice would result from respecting the corporate form.

6

Jurisdictional and Venue Statement

26. This district court has original jurisdiction under 28 U.S.C. §1332(a)(1-3), 28 U.S.C. §1332(d)(2)(A)-(C) and 28 U.S.C. §1367 since diversity jurisdiction exists between Moulton and the Defendants, there are in excess of 10,000 proposed class members and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

27. Defendant LG, USA has its principal place of business including corporate executive offices located at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. *In personam* jurisdiction exists over defendant LG under the so-called New Jersey "long-arm rule" (New Jersey Court Rule 4:4-4). Defendant LG directly and through its agents regularly transacts business and otherwise derives substantial revenue in New Jersey. Defendant LG conducts continuous and systematic economic activities in New Jersey. The Defendants intentionally and purposefully placed their televisions and/or components and/or licensed technology in the stream of commerce in New Jersey and throughout the United States. LG directly and through LG, USA and other subsidiaries deliberately placed tens of thousands of its products in New Jersey commerce. The Defendants had a reasonable expectation that the class televisions they produced, manufactured and distributed would be used in New Jersey. Class televisions produced, manufactured and distributed by the Defendants were sold and used in New Jersey. Subjecting the

7

Defendants to *in personam* jurisdiction in New Jersey does not violate the Defendants' due process rights and comports with requirements of fair play and substantial justice.

28. Venue is conferred by 28 U.S.C. § 1391 as the Defendants regularly and purposefully do business in this judicial district and a substantial part of the events giving rise to the claim occurred here.

Class Action Allegations

29. Moulton initiates this national class action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of herself and all members of the following proposed sub-classes (hereinafter collectively referred as "proposed class members") defined as follows: (sub-class no. 1) All owners and former owners of class televisions whether individuals or business entities sustaining monetary loss incurred from repairing and/or prematurely replacing the class television and components whose claims are governed by the application of New Jersey substantive law; (sub-class no. 2) All owners and former owners of class televisions whether individuals or business entities sustaining monetary loss incurred by diminution of class television resale value whose claims are governed by the application of New Jersey substantive law; (sub-class no. 3) (sub-class no. 4) All owners and former owners of class televisions whether individuals or business entities sustaining monetary loss incurred from repairing and/or prematurely replacing the class

8

television and components whose claims are governed by the application of substantive law substantially similar to New Jersey substantive law; and, (sub-class no. 5) All owners and former owners of class televisions whether individuals or business entities sustaining monetary loss incurred by diminution of class television resale value whose claims are governed by the application of substantive law substantially similar to New Jersey substantive law.

Numerosity of the Class

30. The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 24. There were in excess of 200,000 class televisions imported into the United States. Although information concerning the number, location and identity of all proposed class members is not presently ascertainable, this information is obtainable through discovery from the Defendants.

Existence of Common Questions of Law and Fact

31. Common questions of law and fact exist as to all members of the proposed sub-classes and predominate any and all issues of law and fact affecting individual members of the class. These issues include but are not limited to:

a. Whether class televisions are defectively designed and/or manufactured so as to predispose the television to premature failure including but not limited to printed wiring boards;

9

b.   Whether class televisions sustained damage directly or indirectly by use of defective electronic components including but not limited to printed wiring boards and sub-assemblies that were of inadequate voltage and/or heat rating;

c.   Whether class televisions sustained damage directly or indirectly caused by inadequate cooling fans and/or defective heat sinks;

d.   Whether the Defendants conducted adequate testing of class televisions to determine maintenance procedures and durational warranties;

e.   Whether the Defendants breached their express warranties in that class televisions were defective with respect to design and manufacture;

f.   Whether the Defendants breached their implied warranties in that class televisions were defective with respect to design and manufacture;

g.   Whether the Defendants breached their implied warranties in that class televisions were accompanied by an Owner's Manual incorporating incorrect television maintenance recommendations and service intervals;

h.   Whether the Defendants fraudulently or negligently misrepresented and/or concealed material facts concerning the characteristics of class televisions;

10

i.    Whether the Defendants were aware of defects in class televisions and actively, affirmatively and/or fraudulently concealed the existence of defects in the televisions and/or incorrect information incorporated in the respective accompanying Owner's Manuals;

j.    Whether the Defendants committed unfair and deceptive business trade act practices in the sale of class televisions including the accompanying warranties and subsequent secret warranties;

k.    Whether the Defendants had a duty to disclose their knowledge of class television defects and/or knowledge that the Owner's Manual for class televisions set forth incorrect maintenance recommendations and intervals;

l.    Whether the Defendants were unjustly enriched by their warranty breaches, misrepresentations and deceptive business practices;

m.    Whether proposed class members are entitled to restitution, monetary damages and/or injunctive relief;

n.    Whether the court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct;

o.    Whether class televisions have a diminished life and residual value;

p.    Whether proposed class members are able to economically afford individual litigation against the Defendants; and,

q. Whether the Defendants had a duty to disclose the safety risks of overheated class televisions catching fire.

## Typicality of Claims or Defenses of a Definable Class

32. The claims and defenses of proposed class representative Moulton is typical of the claims and defenses of proposed class members. Class claims arise out of ownership of class televisions as defined in ¶¶1-2. The Defendants in this proposed class action have no counterclaims or defenses unique to proposed class representative Moulton.

## Adequate Representation

33. Proposed class representative Moulton has no conflicting interests with any other class member. Moulton will fairly and adequately protect the interests of the class. Claims of proposed class representative Moulton and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence. Moulton has retained counsel adequate to protect the interests of all proposed class members.

## Superiority of a Class Action

34. Maintenance of a class action is the most economical procedural device to litigate LG plasma and LCD television defect claims. Prosecution of separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish

12

incompatible standards of conduct for the Defendants as recognized by Fed. R. Civ. P. 23(b)(1)(A).

35. Prosecution of separate actions by or against individual class members would create the risk of inconsistent adjudications with respect to individual class members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. Rule 23(b)(1)(B).

36. There is a substantial likelihood that the Defendants will act or refuse to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate as recognized by Fed. R. Civ. P. 23(b)(2).

37. Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

Further Allegations

38. Moulton and proposed class members had valid and binding warranties and contracts with the Defendants and were reasonably expected by these Defendants to use their respective class televisions in the manner in which the televisions were used.

13

39. Moulton and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for their respective class televisions.

40. Moulton and proposed class members operated their televisions under normal anticipated conditions.

41. In 2010, Moulton's class television sustained total failure caused by design and manufacture defects as described in this complaint.

42. Moulton contacted LG, USA via telephone concerning her class television failure and warranty breach. Moulton was informed by representatives of LG, USA that LG and LG, USA would not provide assistance in repairing her television because it was outside of the express warranty period set out in the Owner's Manual.

43. The Defendants actively concealed the reasonably expected duration of class television components including but not limited to printed wiring boards, capacitors and other electronic components from Moulton and all class television purchasers. The Defendants intentionally failed to inform class television purchasers that class televisions incorporated defective electronic components including but not limited to printed wiring boards, capacitors and other components that would prematurely fail.

44. The Defendants intentionally failed to inform class television purchasers that plasma and LCD technology incorporated in class

14

televisions results in higher operational costs than conventional cathode ray tube televisions or other competitive technology.

45. The Defendants timely received Moulton's breach of warranties notices through their authorized representatives and suffered no resulting prejudice.

46. The Defendants refused to fully reimburse or compensate Moulton for class television repair expenses or provide substitute or replacement televisions.

47. Although her television failure occurred outside the unilateral one year express warranty period set out in her class television Owner's Manual (which was neither seen nor bargained for prior to purchase by Moulton), Moulton's television exhibited unmistakable symptoms (known only by the Defendants) of degradation and impending premature failure within the express warranty. Despite actual and constructive knowledge of class television defects, the defendants failed to cure class television defects within the unilateral one year express warranty period and thereby breached the terms of the express warranty.

48. Through no fault of her own, Moulton did not possess sufficient technical expertise to recognize symptoms of impending television failure although this information was well known to the Defendants but kept secret.

15

49. Moulton relied upon material misrepresentations and fraudulent statements made by employees and agents of the Defendants at the time of purchase and immediately after her class television failed.

50. The Defendants actively and fraudulently concealed the existence of class television design and manufacture defects and that class televisions were accompanied by an Owner's Manual incorporating improper maintenance recommendations and maintenance intervals.[1]

51. The Defendants made false and fraudulent representations to class members after their televisions failed that certain conditions for which the Defendants were not responsible caused class television failures.

52. Authorized LG television dealers and service centers did not have knowledge of and/or were counseled not to admit that any defects existed in the class television or that improper maintenance recommendations were incorporated in the Owner's Manual.

53. LG television dealers and authorized service centers (who also had a vested financial interest in concealing and suppressing the actual cause of class television failures) blamed television failures on certain conditions for which the Defendants were not responsible.

---

[1] Additional information supporting allegations of this fraud and fraudulent conduct is in the control of the Defendants. This information includes but is not limited to technical root cause analyses, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class televisions were defective.

16

54. Moulton's class television cost approximately $2,000.00 at the time of purchase.   Moulton will incur substantial expense replacing her class television that prematurely failed.

55. A reasonable person who purchased a class television making an inquiry into the cause of television failure would not have discovered that class televisions had design and manufacture defects and improper maintenance recommendations because those facts were inherently unknowable and were further concealed by the Defendants' affirmative acts (including active fraud with the intent to deceive).   Moulton did not learn her class television was defectively designed and manufactured until after it failed in 2010.

56. The Defendants had actual knowledge and/or should have known upon proper inquiry and testing that class televisions were defective and suffered from extensive irreversible premature performance degradation before sales of class televisions commenced in the United States.

57. This information was technical in nature and not known by the ordinary consumer or the public including Moulton and proposed class members.

58. Moulton and proposed class members were ignorant of this technical information through no fault of their own.

59. Although the Defendants knew defects in class televisions caused premature failure (including but not limited to premature failure of printed wiring board and integrated components), the Defendants

17

knowingly and actively concealed material information from prospective purchasers and actual purchasers with the intent to deceive purchasers and promote class television sales.

60. This proprietary material information concerned the propensity of class televisions to accumulate excessive heat buildup in normal operation causing premature component failure. This material information further concerned the use of defectively designed and manufactured television circuitry and/or sub-standard electronic components that prematurely failed in normal foreseeable operation.

61. Material information fraudulently concealed and/or actively suppressed by the Defendants includes but is not limited to class television defects described in the preceding paragraphs.

62. Material information was fraudulently concealed and/or actively suppressed in order to sell class televisions to uninformed consumers (including Moulton and proposed class members) premised on affirmations and representations of reliable long-life televisions with low maintenance, inexpensive operating costs, high quality and superior performance.

63. Material information was fraudulently concealed and/or actively suppressed in order to protect the Defendants' (and authorized television dealers') corporate profits from loss of sales from adverse publicity and warranty repairs.

64. The fraudulent conduct of the Defendants tolls any applicable statutes of limitations since the fraudulent misrepresentations

18

concerning the true cause of failures in class televisions was an inherently unknowable fact given the technical nature of the class television design and manufacturing defects.

65. Class television owners do not possess the requisite technical skills in electronics to discern the design and manufacture defects in their televisions or the requisite technical skills to surmise the proper television maintenance and maintenance intervals for class televisions.

66. New Jersey statutory law, the doctrine of equitable tolling and the discovery rule toll the applicable statutes of limitations for all class televisions because of the Defendants' fraudulent conduct including but not limited to concealment of class television defects and omission of material facts.

67. Class members relied on the Defendants' fraudulent misrepresentations concerning the cause of class television failures and delayed bringing suit against the Defendants. These misrepresentations concern the fact that class televisions were failing due to design and manufacture defects. The Defendants fraudulently attributed class television failures as caused by environmental factors such as excessive heat and dust, voltage surges and power brownouts together with other exculpating conditions for which the Defendants had no responsibility.

68.  The  Defendants  are  estopped  from  asserting  that  statutes  of limitations  were  running  for  the  duration  of  time  class  members relied on the Defendants' fraudulent representations.

69.  The  Defendants  are  equitably  estopped  from  asserting  the statutes  of  limitations  were  running  against  the  claims  of  class members.

70.  The  Defendants  had  a  duty  to  disclose  to  owners  of  class televisions that there were design and manufacture defects in class televisions  and  that  the  Owner's  Manuals  set  forth  the  wrong maintenance recommendations and maintenance intervals.

71.  This  duty  arose  because  the  Defendants  knew  that  there  were defects  in  the  televisions  and  Owner's  Manuals  that  affected television  operation  and  safety  while  the  class  television  owners were  not  cognizant  of  these  defects  and  dangers.   In  order  to  lower production  costs,  the  Defendants  further  incorporated  insufficiently rated  electronic  components  in  the  class  televisions  that prematurely failed and increased the risk of an electrical fire.

72.  The  Defendants  continuously  and  affirmatively  concealed  the actual  characteristics  of  class  televisions  from  Moulton  and  other purchasers.   The  Defendants  breached  their  affirmative  duty  of disclosure  to  class  television  owners  (and  particularly  to  owners who inquired as to the cause of class television failures).

73.  The  Defendants  had  superior  and  exclusive  knowledge  of  class television  design  and  manufacture  defects  and  owed  class  television

owners a fiduciary duty to disclose defects including those defects creating an unreasonable risk of harm.[2]

74.  The Defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in class televisions and omissions in accompanying Owner's Manuals.

75.  The warranties accompanying the Moulton and class televisions were unconscionable under N.J. Stat. Ann. § 12A: 2-302 and other applicable state laws because of the disparity in bargaining power of the parties, lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to unfairly shifting repair costs to consumers when class televisions prematurely failed), absence of effective warranty competition and the fact that class televisions failed with substantially fewer hours of operation than competitive televisions from other manufacturers.

76.  Class television warranties are oppressive, unreasonable and unconscionable because of increased unanticipated class television maintenance costs, television defects and premature television failure constitute an unfair contractual surprise for Moulton and proposed class members.  Purchasers of class televisions reasonably

---

[2]  Since television component overheating is a serious fire safety issue, the Defendants had an affirmative duty to disclose the television defects together with associated risks.

expect televisions to function well in excess of one year before requiring repairs.

77. Given the conduct of the Defendants and the design and manufacture defects in class televisions (that the Defendants knew were inherently defective), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of Moulton and proposed class members were neither knowing nor voluntary.

78. Moulton and proposed class members had an absence of meaningful choice in the purchase of class televisions and the contractual terms were unreasonably favorable to the Defendants.

79. The bargaining position of the Defendants for the sale of class televisions was grossly disproportionate and vastly superior to that of individual television purchasers including Moulton and proposed class members.

80. The Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that class televisions were inherently defective and dangerous and had been inadequately tested.

81. The Defendants' conduct renders the television purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the television purchase contract.

82. The durational limitation of the express warranties accompanying the class televisions is unreasonable and unconscionable since the

Defendants actively concealed known television defects and issued incorrect maintenance recommendations and maintenance intervals. Moulton and proposed class members had no notice of the defects or ability to detect the defects.

83. Competitive televisions manufactured and sold at the time the class televisions were manufactured and sold ordinarily last longer than warranties accompanying class televisions.

84. The Defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal class television design defects, manufacturing defects and improperly recommended maintenance.

85. The Defendants are engaged in a continuing fraud concerning the underlying and true cause of class television failures.

86. The Defendants failed to test adequately class televisions in appropriate consumer environments.

87. The Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies.

88. Moulton and proposed class members operated and maintained their class televisions in conformity with the respective Owner's Manual and provided the requisite notice to the Defendants' authorized agents for warranty repair after their class televisions failed.

89. Repair costs for class television failures range between $250.00 and $750.00, depending on the extent of the damage and cost of replacement components. Some class televisions are not repairable

because parts are no longer available and there was no guarantee that the repair would be successful or reasonably long in duration. In many instances, continuing to incur costs to repair a defective class television is not warranted.

90. Even if class televisions do not fail entirely, class television owners have sustained an ascertainable loss and financial loss including but not limited to increased maintenance costs and substantially reduced performance.

91. Individuals who own or have owned class televisions sustained diminution of the resale value of their class televisions since knowledge of problems with class televisions became public information.

92. If Moulton and proposed class members had been informed of the defects in class televisions or operational costs, they would not have purchased their respective class televisions or would have paid substantially less.[3]

## COUNT I
### BREACH OF N.J. STAT. ANN. § 12A: 2-314: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM

93. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

---

[3] Given the vast disparity in expertise, including knowledge of television design, manufacture and testing processes, Moulton and proposed class members had to rely on the Defendants' representations and warranties concerning the class televisions.

94. Moulton and proposed class members purchased class televisions from the Defendants' authorized dealers for non-commercial purposes.

95. The Defendants are merchants with respect to consumer televisions. Class televisions are goods within the meaning of the Uniform Commercial Code as adopted by New Jersey.

96. The Defendants impliedly warranted to the public and owners of class televisions that class televisions were merchantable and fit for the ordinary purposes for which consumer televisions are used.

97. As manufacturers of consumer goods, the Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

98. The defendants failed to provide written notice to Moulton and other class television purchasers of implied warranty exclusions at time of purchase because the warranty exclusion was in the sealed television box and was ineffective since it was not conspicuous within the meaning of N.J. Stat. Ann. § 12A: 2-316.

99. Class televisions were not of merchantable quality and were unfit for the ordinary purposes for which televisions are used.

100. The Defendants received adequate notice of their breach of the implied warranty of merchantability and request for repair or replacement. In the alternative, the plaintiffs, as indirect purchasers were not required to issue notice of the warranty breach to the Defendants and/or lack of notice of warranty breach did not

result in any prejudice to the Defendants.   The Defendants declined to offer Moulton an effective remedy for her defective television.

101. The Defendants breached their implied warranties in that class televisions were defective with respect to design and manufacture.

102. Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Manual and accompanying literature set forth the wrong maintenance recommendations and maintenance intervals; (2) Class televisions incorporate insufficient ventilation and heat sinks to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate sub-standard electronic components that prematurely fail including but not limited to components that have insufficient temperature and voltage performance; and, (5) Electronic circuitry in class televisions is defectively designed and manufactured including but not limited to the printed wiring boards and subcomponents located on and adjacent to the boards.

103. These defects render the class televisions unfit for providing entertainment at the time the televisions were delivered.

104. Class televisions are not reliable and owners of these televisions have lost confidence in the ability of class televisions to perform the function of safe reliable entertainment.

105. Even though Moulton and proposed class members complied with television use and maintenance recommendations for their respective class televisions, their respective televisions prematurely failed.

106. Moulton and proposed class members reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon their implied warranty that class televisions were of merchantable quality and fit for their intended use.

107. Moulton and proposed class members relied on implied warranties of merchantability made by the Defendants concerning the class televisions and sustained an ascertainable loss and financial injury resulting from the breach of those warranties by the Defendants.

108. Moulton and proposed class members had a legitimate consumer expectation that the class televisions would last well in excess of 10 years before requiring any major repairs based on industry standards, competitor products, consumer product magazines, prior television ownership and reputation of the Defendants for manufacturing durable quality electronic goods. There were no statements made by the Defendants or their agents which contradicted their legitimate consumer expectations at the time of purchase.

109. Moulton and proposed class members could not have reasonably discovered the defective condition of the class televisions at the time of purchase.

110. The Defendants' breach of implied warranties of merchantability was the direct and proximate cause of financial harm to Moulton and the proposed class members.

Wherefore, Moulton and proposed class members demand judgment against Defendants including monetary damages, interest, costs and attorneys' fees.

## COUNT II
### BREACH OF N.J. STAT. ANN. § 12A: 2-313: BREACH OF EXPRESS WARRANTY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM

111. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

112. The Defendants expressly warranted to the public including Moulton and proposed class members, that class televisions were merchantable and fit for the ordinary purposes for which televisions are used.

113. The Defendants extensively advertised that class televisions were superior in construction and extolled the quality and virtues of class televisions including superior design and manufacture, safety, durability, reliability and performance.

114. Moulton was unaware of any express warranty exclusions because she did not receive her class television Owner's Manual and warranty

28

materials that contained the purported warranty exclusions at the time of purchase.  Her televisions and shipping boxes were not marked "irregular", "factory seconds", "as is", "with all faults" or "damaged".  Class television Owner's Manuals and warranty materials were in the sealed shipping box that contained the television.[4] Consequently, Moulton was not presented with an opportunity to review (let alone bargain for) warranty provisions at the time of purchase of her class television.

115.  The Defendants represented that the televisions in class televisions were of a particular standard or quality when they in fact were not.

116.  The Defendants' representations were made in newspapers, magazines, television and Internet advertising viewed by Moulton and proposed class members.  Other representations were made by the Defendants' authorized retail venders who relied upon their training, promotional publications and statements contained in materials generated by the Defendants including but not limited to class television Owner's Manuals.

117.  The Defendants breached their express warranties in that class televisions were defective with respect to design and manufacture.

---

[4] Even if the Owner's Manual and warranty materials had been present for pre-purchase review, the warranty exclusion clause failed to satisfy conspicuity and other requirements of N.J. STAT. ANN. § 12A: 2-316.

118.  The  Defendants  received  adequate  notice  of  their  breach  of their  express  warranties  and  failed  to  cure  the  warranty  breaches. In  the  alternative,  the  plaintiffs,  as  indirect  purchasers  were  not required  to  issue  notice  of  the  warranty  breach  to  the  Defendants and/or  lack  of  notice  of  warranty  breach  did  not  result  in  any prejudice  to  the  Defendants.

119.  Class  televisions  are  not  reliable  and  owners  of  these televisions  have  lost  confidence  in  the  ability  of  class  televisions to  perform  the  function  of  safe  reliable  entertainment.

120.  Moulton  and  proposed  class  members  complied  with  television maintenance  recommendations  for  their  respective  class  televisions.

121.  The  Defendants  failed  to  remedy  Moulton's  defective  class television  during  the  express  warranty  period  although  these  defects were  known  to  the  Defendants  at  that  time.   Class  televisions  owned by  proposed  class  members  also  prematurely  failed  and/or  experienced substantial  performance  diminution  within  the  express  warranty period.

122.  Moulton  and  proposed  class  members  relied  on  express  warranties made  by  the  Defendants  concerning  the  class  televisions  and sustained  an  ascertainable  loss  and  other  financial  injury  resulting from  the  breach  of  those  warranties  by  the  Defendants.

123.  Moulton  and  proposed  class  members  could  not  have  reasonably discovered  the  defective  condition  of  their  class  televisions  prior to  failure.

124. The Defendants' breach of their express warranties was the direct and proximate cause of cause of financial harm to Moulton and the proposed class members.

125. The express warranty remedy set out in the Owner's Manual of class televisions fails of its essential purpose under N.J. Stat. Ann. § 12A: 2-719(2) and the limitation of consequential damages is unconscionable under N.J. Stat. Ann. § 12A: 2-719(3) because of the conduct of the defendants described *supra*.

Wherefore, Moulton and proposed class members demand judgment against Defendants including monetary damages, interest, costs and attorneys' fees.

### COUNT III
### INTENTIONAL MISREPRESENTATION BY NONDISCLOSURE OF MATERIAL FACTS BY THE DEFENDANTS RESULTING IN FINANCIAL HARM

126. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

127. Moulton and proposed class members relied upon the LG and/or LG, USA brand name as representing quality consumer electronic goods and were confident as to the quality it possessed.

128. Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Manual and accompanying literature set forth the wrong maintenance

31

recommendations and maintenance intervals; (2) Class televisions incorporate insufficient ventilation and heat sinks to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate sub-standard electronic components that prematurely fail including but not limited to components that have insufficient temperature and voltage performance; and, (5) Electronic circuitry in class televisions is defectively designed and manufactured including but not limited to the printed wiring boards and subcomponents located on and adjacent to the boards.

129. The Defendants knew there were defects in the design and manufacture of class televisions and that testing of class televisions was inadequate. This information was not ascertainable by Moulton and proposed class members who purchased class televisions. At the time of sale, the Defendants had a duty to disclose these defects and other material information but elected not to. The Defendants, directly and/or indirectly failed through authorized retail vendors to disclose class television defects and other material facts to class television purchasers. This duty arose from inequality of condition and knowledge together with other attendant circumstances.

32

130.  The Defendants actively concealed material facts concerning class televisions including but not limited to operating costs.

131.  The Defendants should have disclosed facts basic to the purchase of class televisions since the Defendants knew Moulton and proposed class members were uniformed or mistaken as to the operating costs associated with class televisions including but not limited to replacement of printed wiring boards, sub-assemblies and individual components.  Moulton and proposed class members would have reasonably expected a disclosure from the Defendants of facts concerning class television operating costs because of the customs of the trade and/or other objective circumstances.

132.  The Defendants intended that Moulton and proposed class members should not be informed of material facts concerning attributes of the class televisions that would negatively influence the decision to purchase class televisions.  The Defendants knew that purchasers of class televisions were acting under mistakes of fact (including but not limited to expected useful operating life, durability of electronic components and other operating costs) that were basic to the transaction and disclosure would reasonably be expected.

133.  If the Defendants had disclosed that class televisions were defective and/or had been inadequately tested and would require regular replacement of printed wiring boards and other expensive components, Moulton and proposed class members would not have purchased their class televisions and/or paid substantially less.

33

134. Moulton and proposed class members suffered direct and proximate ascertainable loss, financial harm and property damage caused by the Defendants' nondisclosure of material facts concerning defects, operational costs and maintenance of class televisions including but not limited to the fact that class televisions would require regular replacement of printed wiring boards and other expensive components.

Wherefore, Moulton and proposed class members demand judgment against Defendants including a refund for the purchase price of class televisions as set out in N.J. STAT. ANN. §§ 56:8-2.11, statutory damages, interest, costs and attorneys' fees.

**COUNT IV**
**VIOLATION OF THE N.J. CONSUMER FRAUD ACT:**
**N.J. STAT. ANN. §§ 56:8-1 *et seq*. BY THE DEFENDANTS**

135. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

136. The Defendants are persons within the context of N.J. Stat. Ann. § 56:8-1(d).

137. Class televisions are merchandise within the context of N.J. Stat. Ann. § 56:8-1(c).

138. The Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of N.J. Stat. Ann. § 56:8-2 as described in this complaint.

139. The defendants committed unconscionable commercial practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts with intent that Moulton and other class television purchasers would rely upon such concealment, suppression and/or omission in connection with the sale and/or advertisement of class televisions.

140. The Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Moulton and proposed class members the required maintenance and/or maintenance intervals of class televisions including but not limited to regular replacement of expensive components.

141. The Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Moulton and proposed class members the characteristics of class televisions with respect to design, manufacture, durability, longevity, maintenance and operating costs.

142. The Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Moulton and proposed class members the defects in the class televisions even though the Defendants knew or should have known of design and manufacturing defects shortly after production of the class television commenced.

143. The Defendants had actual knowledge that design and manufacturing defects were causing extensive irreversible premature

35

performance degradation in class televisions shortly after production of the class television commenced.

144. The Defendants actively suppressed the fact that class televisions were failing because of design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

145. The Defendants secretly repaired some class televisions to prevent dissemination of knowledge concerning television defects.

146. The Defendants intended or should have known that Moulton and proposed class members would rely upon misrepresented characteristics of class televisions with respect to design, manufacture and information in the Owner's Manuals.

147. Moulton and proposed class members complied with use and maintenance recommendations for their respective class televisions.

148. Although the Defendants knew defects in class televisions and misinformation in the Owner's Manuals were causing premature class television failures, the Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual television owners.

149. One scheme included blaming class television failures on owners for conditions the Defendants were not responsible.

150. Rather than conduct an open and fair inspection and repair procedure for all class televisions, the Defendants employed unfair and deceptive trade act practices to deny repairs or repair reimbursements in violation of NJCFA.

151. If the Defendants had not concealed class television defects from Moulton and class members within the express warranty period, class televisions would have repaired without cost to purchasers under the original warranty.

152. The Defendants fraudulently concealed unmistakable manifestations of impending class television failures within the express warranty period without inspecting, repairing or replacing damaged internal class television components.

153. The Defendants violated NJCFA by failing to inform class television owners prior to purchase and/or during the warranty period that class televisions were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

154. The Defendants violated NJCFA by failing to inform class television owners prior to purchase and/or during the warranty period that class televisions contained defects and would require regular replacement of expensive printed wiring boards and/or other electronic components.

155. The Defendants further violated NJCFA by failing to inform prospective class television purchasers that the Defendants had not properly tested the televisions including but not limited to the printed wiring boards and electronic components.

156. The Defendants committed unfair and deceptive business trade act practices as set forth in all preceding counts and as described

37

in this count.   The Defendants repeatedly violated NJCFA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class televisions owned by Moulton and proposed class members.

157. The secret warranty programs for class televisions initiated by the Defendants and other wrongful conduct of the Defendants that violates the NJCFA occurred within the limitations period set out in the statute and/or is tolled by the defendants' conduct.

158. As a proximate and direct result of the Defendants' unfair and deceptive business trade practices, Moulton and proposed class members purchased class televisions and sustained an ascertainable loss and financial harm.

159. Moulton and proposed class members experienced premature class television failure, diminution of television resale value, increased maintenance costs and incurred other substantial monetary damages and inconvenience.

160. The conduct of the Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class television owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

38

Wherefore, Moulton and proposed class members demand judgment against Defendants including statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief.

## COUNT V
## UNJUST ENRICHMENT / RESTITUTION

161. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

162. Moulton and proposed class members do not have an adequate remedy at law.

163. Moulton and proposed class members conferred a direct monetary benefit on the Defendants, but for the Defendants' misrepresentations, fraud, active acts of concealment and other wrongful conduct Moulton and the proposed class members would not have conferred.

164. The Defendants obtained financial gain by selling class televisions and replacement parts for class televisions that abnormally and prematurely failed due to design and manufacture defects.

165. Moulton and proposed class members sustained monetary damages.

166. Allowing the Defendants to retain their unjust monetary enrichment from their wrongful and unlawful acts would violate the fundamental principles of justice and would be otherwise inequitable.

Wherefore Moulton and proposed class members request that the Defendants disgorge their profits from their wrongful and unlawful conduct and that the court establish a constructive trust funded by the benefits conferred upon the Defendants.  Moulton and proposed class members should be designated beneficiaries of the trust and obtain restitution for their out of pocket expenses caused by the Defendants' conduct.

### COUNT VI
**BREACH OF R.I. GEN. STAT. § 6a-2-314: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM[5]**

167. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

168. Moulton and proposed class members purchased class televisions from the Defendants' authorized dealers for non-commercial purposes.

169. The Defendants are merchants with respect to consumer televisions.  Class televisions are goods within the meaning of the Uniform Commercial Code as adopted by Rhode Island.

170. The Defendants impliedly warranted to the public and owners of class televisions that class televisions were merchantable and fit for the ordinary purposes for which consumer televisions are used.

171. As manufacturers of consumer goods, the Defendants are precluded from excluding or modifying an implied warranty of

---

[5]   Count VI through and including Count IX are alternative counts setting out claims arising under Rhode Island law in the event the Court declines to apply New Jersey law to this proceeding.

merchantability or limiting consumer remedies for breach of this warranty.

172. The defendants failed to provide written notice to Moulton and other class television purchasers of implied warranty exclusions at time of purchase because the warranty exclusion was in the sealed television box and was ineffective since it was not conspicuous within the meaning of R.I. Gen. Stat. § 6A-2-316.

173. Class televisions were not of merchantable quality and were unfit for the ordinary purposes for which televisions are used.

174. The Defendants received adequate notice of their breach of the implied warranty of merchantability and request for repair or replacement. In the alternative, the plaintiffs, as indirect purchasers were not required to issue notice of the warranty breach to the Defendants and/or lack of notice of warranty breach did not result in any prejudice to the Defendants. The Defendants declined to offer Moulton an effective remedy for her defective television.

175. The Defendants breached their implied warranties in that class televisions were defective with respect to design and manufacture.

176. Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Manual and accompanying literature set forth the wrong maintenance recommendations and maintenance intervals; (2) Class televisions

41

incorporate insufficient ventilation and heat sinks to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate substandard electronic components that prematurely fail including but not limited to components that have insufficient temperature and voltage performance; and, (5) Electronic circuitry in class televisions is defectively designed and manufactured including but not limited to the printed wiring boards and subcomponents located on and adjacent to the boards.

177. These defects render the class televisions unfit for providing entertainment at the time the televisions were delivered.

178. Class televisions are not reliable and owners of these televisions have lost confidence in the ability of class televisions to perform the function of safe reliable entertainment.

179. Even though Moulton and proposed class members complied with television use and maintenance recommendations for their respective class televisions, their respective televisions prematurely failed.

180. Moulton and proposed class members reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon their implied warranty that class televisions were of merchantable quality and fit for their intended use.

181. Moulton and proposed class members relied on implied warranties of merchantability made by the Defendants concerning the class televisions and sustained an ascertainable loss and financial injury resulting from the breach of those warranties by the Defendants.

182. Moulton and proposed class members had a legitimate consumer expectation that the class televisions would last well in excess of 10 years before requiring any major repairs based on industry standards, competitor products, consumer product magazines, prior television ownership and reputation of the Defendants for manufacturing durable quality electronic goods. There were no statements made by the Defendants or their agents which contradicted their legitimate consumer expectations at the time of purchase.

183. Moulton and proposed class members could not have reasonably discovered the defective condition of the class televisions at the time of purchase.

184. The Defendants' breach of implied warranties of merchantability was the direct and proximate cause of financial harm to Moulton and the proposed class members.

Wherefore, Moulton and proposed class members demand judgment against Defendants including monetary damages, interest, costs and attorneys' fees.

43

## COUNT VII
### BREACH OF R.I. GEN. STAT. § 6a-2-313: BREACH OF EXPRESS WARRANTY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM

185. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

186. The Defendants expressly warranted to the public including Moulton and proposed class members, that class televisions were merchantable and fit for the ordinary purposes for which televisions are used.

187. The Defendants extensively advertised that class televisions were superior in construction and extolled the quality and virtues of class televisions including superior design and manufacture, safety, durability, reliability and performance.

188. Moulton was unaware of any express warranty exclusions because she did not receive her class television Owner's Manual and warranty materials that contained the purported warranty exclusions at the time of purchase. Her televisions and shipping boxes were not marked "irregular", "factory seconds", "as is", "with all faults" or "damaged". Class television Owner's Manuals and warranty materials were in the sealed shipping box that contained the television.[6] Consequently, Moulton was not presented with an opportunity to

---

[6] Even if the Owner's Manual and warranty materials had been present for pre-purchase review, the warranty exclusion clause failed to satisfy conspicuity and other requirements of § 6a-2-316.

review (let alone bargain for) warranty provisions at the time of purchase of her class television.

189.  The Defendants represented that the televisions in class televisions were of a particular standard or quality when they in fact were not.

190.  The Defendants' representations were made in newspapers, magazines, television and Internet advertising viewed by Moulton and proposed class members.  Other representations were made by the Defendants' authorized retail venders who relied upon their training, promotional publications and statements contained in materials generated by the Defendants including but not limited to class television Owner's Manuals.

191. The Defendants breached their express warranties in that class televisions were defective with respect to design and manufacture.

192. The Defendants received adequate notice of their breach of their express warranties and failed to cure the warranty breaches. In the alternative, the plaintiffs, as indirect purchasers were not required to issue notice of the warranty breach to the Defendants and/or lack of notice of warranty breach did not result in any prejudice to the Defendants.

193. Class televisions are not reliable and owners of these televisions have lost confidence in the ability of class televisions to perform the function of safe reliable entertainment.

194. Moulton and proposed class members complied with television maintenance recommendations for their respective class televisions.

195. The Defendants failed to remedy Moulton's defective class television during the express warranty period although these defects were known to the Defendants at that time. Class televisions owned by proposed class members also prematurely failed and/or experienced substantial performance diminution within the express warranty period.

196. Moulton and proposed class members relied on express warranties made by the Defendants concerning the class televisions and sustained an ascertainable loss and other financial injury resulting from the breach of those warranties by the Defendants.

197. Moulton and proposed class members could not have reasonably discovered the defective condition of their class televisions prior to failure.

198. The Defendants' breach of their express warranties was the direct and proximate cause of cause of financial harm to Moulton and the proposed class members.

199. The express warranty remedy set out in the Owner's Manual of class televisions fails of its essential purpose under R.I. Gen. Stat. § 6a-2-719(2) and the limitation of consequential damages is unconscionable under R.I. Gen. Stat. § 6a-2-719(3) because of the conduct of the defendants described *supra*.

Wherefore, Moulton and proposed class members demand judgment against Defendants including monetary damages, interest, costs and attorneys' fees.

### COUNT VIII
### INTENTIONAL MISREPRESENTATION BY NONDISCLOSURE OF MATERIAL FACTS BY THE DEFENDANTS RESULTING IN FINANCIAL HARM

200. Moulton and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

201. Moulton and proposed class members relied upon the LG and/or LG, USA brand name as representing quality consumer electronic goods and were confident as to the quality it possessed.

202. Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Manual and accompanying literature set forth the wrong maintenance recommendations and maintenance intervals; (2) Class televisions incorporate insufficient ventilation and heat sinks to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate sub-standard electronic components that prematurely fail including but not limited to components that have insufficient temperature and

47

voltage performance; and, (5) Electronic circuitry in class televisions is defectively designed and manufactured including but not limited to the printed wiring boards and subcomponents located on and adjacent to the boards.

203. The Defendants knew there were defects in the design and manufacture of class televisions and that testing of class televisions was inadequate. This information was not ascertainable by Moulton and proposed class members who purchased class televisions. At the time of sale, the Defendants had a duty to disclose these defects and other material information but elected not to. The Defendants, directly and/or indirectly failed through authorized retail vendors to disclose class television defects and other material facts to class television purchasers. This duty arose from inequality of condition and knowledge together with other attendant circumstances.

204. The Defendants actively concealed material facts concerning class televisions including but not limited to operating costs.

205. The Defendants should have disclosed facts basic to the purchase of class televisions since the Defendants knew Moulton and proposed class members were uniformed or mistaken as to the operating costs associated with class televisions including but not limited to replacement of printed wiring boards, sub-assemblies and individual components. Moulton and proposed class members would have reasonably expected a disclosure from the Defendants of facts

48

concerning class television operating costs because of the customs of the trade and/or other objective circumstances.

206. The Defendants intended that Moulton and proposed class members should not be informed of material facts concerning attributes of the class televisions that would negatively influence the decision to purchase class televisions. The Defendants knew that purchasers of class televisions were acting under mistakes of fact (including but not limited to expected useful operating life, durability of electronic components and other operating costs) that were basic to the transaction and disclosure would reasonably be expected.

207. If the Defendants had disclosed that class televisions were defective and/or had been inadequately tested and would require regular replacement of printed wiring boards and other expensive components, Moulton and proposed class members would not have purchased their class televisions and/or paid substantially less.

208. Moulton and proposed class members suffered direct and proximate ascertainable loss, financial harm and property damage caused by the Defendants' nondisclosure of material facts concerning defects, operational costs and maintenance of class televisions including but not limited to the fact that class televisions would require regular replacement of printed wiring boards and other expensive components.

Wherefore, Moulton and proposed class members demand judgment against Defendants including a refund for the purchase price of

49

class televisions, statutory damages, interest, costs and attorneys'
fees.

### COUNT IX
### VIOLATION OF DTPA- UNFAIR AND DECEPTIVE TRADE PRACTICES
### BY THE DEFENDANTS

209. Moulton and proposed class members incorporate by reference all
allegations in the preceding paragraphs as if set forth fully in
this count.

210. The Defendants are persons within the context of unfair and
deceptive business act practices prohibited by the Rhode Island
Deceptive Trade Act, R.I. Gen. Laws § 6-13-1, *et seq.* (hereinafter
"DTPA" and committed unfair and deceptive acts in the course of
trade and commerce.

211. Class televisions are merchandise within the context of N.J.
Stat. Ann. § 56:8-1(c).

212. The Defendants committed unfair and deceptive acts in the
course of trade and commerce within the context of DTPA as described
in this complaint.

213. The defendants committed unconscionable commercial practices
including but not limited to deception, fraud, false pretense, false
promise, misrepresentation and the knowing concealment, suppression
and omission of material facts with intent that Moulton and other
class television purchasers would rely upon such concealment,
suppression and/or omission in connection with the sale and/or
advertisement of class televisions.

50

214. The Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Moulton and proposed class members the required maintenance and/or maintenance intervals of class televisions including but not limited to regular replacement of expensive components.

215. The Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Moulton and proposed class members the characteristics of class televisions with respect to design, manufacture, durability, longevity, maintenance and operating costs.

216. The Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Moulton and proposed class members the defects in the class televisions even though the Defendants knew or should have known of design and manufacturing defects shortly after production of the class television commenced.

217. The Defendants had actual knowledge that design and manufacturing defects were causing extensive irreversible premature performance degradation in class televisions shortly after production of the class television commenced.

218. The Defendants actively suppressed the fact that class televisions were failing because of design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

219. The Defendants secretly repaired some class televisions to prevent dissemination of knowledge concerning television defects.

220. The Defendants intended or should have known that Moulton and proposed class members would rely upon misrepresented characteristics of class televisions with respect to design, manufacture and information in the Owner's Manuals.

221. Moulton and proposed class members complied with use and maintenance recommendations for their respective class televisions.

222. Although the Defendants knew defects in class televisions and misinformation in the Owner's Manuals were causing premature class television failures, the Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual television owners.

223. One scheme included blaming class television failures on owners for poor or improper maintenance, electrical voltage fluctuations and other conditions for which the Defendants were not responsible.

224. Rather than conduct an open and fair inspection and repair procedure for all class televisions, the Defendants employed unfair and deceptive trade act practices to deny repairs or repair reimbursements in violation of DTPA.

225. If the Defendants had not concealed class television defects from Moulton and class members within the express warranty period, class televisions would have repaired without cost to purchasers under the original warranty.

226. The Defendants fraudulently concealed unmistakable manifestations of impending class television failures within the

express warranty period without inspecting, repairing or replacing damaged internal class television components.

227. The Defendants violated DTPA by failing to inform class television owners prior to purchase and/or during the warranty period that class televisions were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

228. The Defendants violated DTPA by failing to inform class television owners prior to purchase and/or during the warranty period that class televisions contained defects and would require regular replacement of expensive printed wiring boards and/or other electronic components.

229. The Defendants further violated DTPA by failing to inform prospective class television purchasers that the Defendants had not properly tested the televisions including but not limited to the printed wiring boards and electronic components.

230. The Defendants committed unfair and deceptive business trade act practices as set forth in all preceding counts and as described in this count. The Defendants repeatedly violated DTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class televisions owned by Moulton and proposed class members.

231. The secret warranty programs for class televisions initiated by the Defendants and other wrongful conduct of the Defendants that violates DTPA occurred within the limitations period set out in the statute and/or is tolled by the defendants' conduct.

232. As a proximate and direct result of the Defendants' unfair and deceptive business trade practices, Moulton and proposed class members purchased class televisions and sustained an ascertainable loss and financial harm.

233. Moulton and proposed class members experienced premature class television failure, diminution of television resale value, increased maintenance costs and incurred other substantial monetary damages and inconvenience.

234. The conduct of the Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class television owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

Wherefore, Moulton and proposed class members demand judgment against Defendants including statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief.

## RELIEF REQUESTED

Wherefore, Moulton and proposed class members request:

a. A class certification order pursuant to Fed. R. Civ. P. 23(c) designating as class members those entities defined in ¶29 with any modifications to the class or sub-classes as required for the efficient and equitable administration of justice in this proceeding;

b. An Order appointing Moulton as representative of the class and designating Thomas P. Sobran and Gary S. Graifman as counsel for the class pursuant to Fed. R. Civ. P. 23(g);

c. Judgment for Moulton and class members against the Defendants on all issues and counts;

d. Damages for Moulton and class members including but not limited to multiple damages where applicable together with prejudgment interest, costs and attorneys' fees;

e. Injunctive relief compelling the Defendants to perform the following procedures to all class televisions without monetary charge: (1) Inspect and replace where necessary the printed wiring boards and other components with unacceptable premature failure rates; and, (2) Perform any other reasonably necessary repair and service procedure to prevent the premature failure of the class television for a period of twelve 12 years from the date of purchase.

f. Restitution for all television repairs and class television replacement costs incurred by Moulton and class members resulting from the defectively designed and manufactured class televisions and incorrect television maintenance recommendations and maintenance intervals as set forth in the respective class television Owner's Manual including compensation for any previous repairs for a period of twelve 12 years from the date of purchase.

g. Restitution for all unanticipated increased past, present and future class television maintenance costs incurred for a period of twelve 12 years from the date of purchase.

h. Disgorgement of the Defendants' revenue from their wrongful and unlawful conduct and the establishment of a constructive trust funded by the benefits conferred upon the Defendants. Moulton and class members should be designated beneficiaries of the trust and obtain restitution for their out of pocket expenses caused by the Defendants' conduct;

i. Any other relief deemed necessary or appropriate by the court.

REQUEST FOR JURY TRIAL

Moulton and proposed class members request trial by jury on all issues and counts.

Deborah Moulton,
By her attorneys,
On behalf of herself and
proposed class members,

_____

Gary S. Graifman, Esq.
Kantrowitz, Goldhamer
& Graifman, P.C.
747 Chestnut Ridge Road
Suite 200
Chestnut Ridge, NY 10977
Tel: (845) 356-2570
ggraifman@kgglaw.com

Thomas P. Sobran, Esq.
7 Evergreen Lane
Hingham, MA 02043
Tel: (781) 741-6075
Tsobran@sobranlaw.com
(Pending admission pro hac vice)